**United States District Court**
**Middle District of Tennessee**

)   Craig Cunningham
)   Plaintiff, Pro-se
)
)         **v.**         Civ Action      3:15-cv-00847
)
) Enagic USA, Inc,Peter Polselli, Terry Collins, Rick Freeman, Angelina Liner,
Christian Kinney, The 7 Figure wealth Corporation,Corazon Management Group,
Inc., Jeffrey Howard, Susie Tremblay-Brown, Peter Wolfing, Multiplex systems
Inc., Brian Kaplan, Walter Peterson, My Minds Eye, LLC, 800Link, Inc Scott Biel,
Jerry Maurer, Dave Hill, aka Dave Allen, aka Dave aleen and John/Jane Doe's 1-
10
)      Defendants.

### Plaintiff's Third Amended Complaint

1.  The Plaintiff in this case is Craig Cunningham, a natural person and was
    resident of Davidson County at all times relevant to the complaint, and
    currently has a mailing address of 5543 Edmondson Pike, ste 248,
    Nashville, TN 37211

2.  Upon information and belief, Enagic USA Inc., is a California Corporation
    that is operating from 4115 Spencer Street, Torrance, CA 90503 and can
    be served via registered agent Toshio Maehara at 24 Mela Ln, Rancho
    Palos Verdes, CA 90275 .

3.  Peter Polselli is a natural person who can be served at 50 Danes street,
    Patchogue, NY 11772.

4.  Brian Kaplan is a natural person who can be served at 2131 College
    Street, Fort Collins, CO 8052 or 1213 Camros Street, Fort Collins, CO
    80525.

1

5. Jerry Maurer is a natural person who can be served at PO Box 735, Arlington Heights, IL 60001 or 2352 Henry Street, North Bellmore, Ny 11710

6. JL Net Bargains, Inc., is a New York Corporation operating from 2532 Henry Street, North Bellmore, New York, 11710. The CEO is Jerry Maurer who can be servd at 2532 Henry Street, Bellmore, New York, 11710.

7. My Minds Eye, LLC is a Florida corporation operating from 22514 Blue Marlin Drive, Boca Raton, FL 33428. The registered agent and manager is Walter Peterson, 22514 Blue Marlin Drive, Boca Raton, FL 33428.

8. Walter Peterson is a natural person who is the manager and registered agent and can be served at 22514 Blue Marlin Drive, Boca Raton, FL 33428.

9. Angelina Liner is a natural person whos address for service is currently unknown, but should be obtained through subpoena or discovery.

10. Rick Freeman is a natural person whose can be served at 3040 Oasis Grand Blvd, #801 Ft. Myers, FL 33916.

11. Terry Collins is a natural person and whose address for service is currently unknown, but should be obtained through subpoena or discovey.

12. Oscar Christian Kinney is a natural person who can be served at 29326 Turnbury Village Dr. Spring, Tx 77386 or 1020 Venitia Ave., Coral Gables, FL 33134

2

13. The 7 Figure Wealth Corporation is a Texas Corporation owned by Oscar Christian Kinney and can be served via registered agent at 29326 Turnbury Village Dr. Spring, Tx 77386

14. Jeffrey Howard, is a natural person who can be served at 5348 Vegas Dr., Las Vegas, NV 89108. He is the manager/officer of the Corazon Management Group, Inc

15. The Corazon Management Group, Inc., is a Las Vegas Corporation operating from 5348 Vegas Drive, Las Vegas, NV 89108. The registered agent is EastBiz.com, Inc. at 5348 Vegas Drive, Las Vegas 89108.

16. Susie Tremblay-Brown is a natural person whose address for service is not yet known to the Plaintiff, but should be obtained through discovery.

17. Peter Wolfing is the owner and manager of Multiplex Systems Inc., a New York corporation operating from 175 E. 96th street, Apartment 18G, New York, New York 10128 or 301 E. 79th Street, Apt 19h New york, New York 10021.

18. Dave Hill, aka Dave Allen, aka Dave aleen is a natural person who can be served at 2769 Bauer Rd., North Aurora, Il 60542 or 2122 W. Galena Blvd #8, Aurora, IL, 60506.

19. 800Link, Inc., is an Ilinois Corporation with a corporate officer and agent for process, Scott Beil, 110 W B Street, Belleville, Ilinois 62220.

20. Scott Beil is the president of 800Link, Inc., and can be served at 918 N. 5th Street, Belleville, IL 62220 or 110 W B Street Belleville, IL 62220.

21. Multiplex Systems Inc., is a New york Corporation oerating from 175 E. 96th Street, At 18G, New york, New York 10128.

3

## Jurisdiction and Factual Allegations

22. Jurisdiction of this court arises as the acts happened and the contract was breached in this county. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here.

23. Personal jurisdiction is apparent as the Defendants placed multiple phone calls to the Plaintiff's cell phone in an attempt to solicit the Plaintiff to join their "get rich quick" schemes to sell an overpriced water dispenser or other get rich quick schemes.

24. In 2015, the Plaintiff received multiple automated phone calls with a pre-recorded message to the Plaintiff's cell phone which informed the Plaintiff about a get rich quick scheme and detailed info products for sale as well as a water machine for sale. The Plaintiff also recieved multiple unsolicited text messages to his cell phone soliciting the Plaintiff to join the program and attend conference calls and other meetings.

25. These phone calls violated the TCPA in two ways, first by having a pre-recorded message and by placing automated calls to the Plaintiff's cell phone in violation of 47 USC 227(b). Secondly, the calls violated 47 USC 227(c)(5) as codified under 47 CFR 64.1200 as the calls failed to identify the party placing the calls The calls also violated 47 CFR 64.1200 by the defendants not maintaining a do not call policy, not maintaining a do not call list, and not training their agents/employees on the use of a do not call list. All of these call and text messages were for telemarketing purposes.

## "Secrets of the wealthy/Super Success Machine" calls

26. The Secret Success Machine (SSM) was a get rich quick scam that centered on selling purported "informational products" such as motivational videos and marketing materials at various dollar levels from $250 all the way up to $20,000. The perpetrators of this scam relied on placing automated telephone calls with a long pre-recorded message, over 20 minutes long of testimonials, claims about how this product "Changed their life". Some of these calls and text messages to the Plaintiff directed the Plaintiff to attend conference calls.

27. During the conference calls, the announcers went over the compensation plan, described how they placed automated calls, waited on consumers to call them back that were interested in buying their products/services, discussed how little of their time was used in this money making venture, due to the automated calls screening out uninterested prospects, and they briefly touched on the product being sold, which they claimed were informational type products and videos.

28. These calls were not related to any emergency purpose, nor were the calls placed with the Plaintiff's consent. The phone calls were to the Plaintiff's cell phones 615-212-9191.

29. One person, "Coach Pete"Peter Polselli claimed to make over $30,000 per month by making thousands of automated calls to consumers pitching an "automated marketing system" and promoting the "secrets of the wealthy" call seminars.

5

30. Apparently the "secret of the wealthy" is to make tens of thousands of illegal phone calls to consumers to ensnare an unwitting few and bilk them out of thousands of dollars selling the American Dream. The "product" being sold is supposed to be info-products, that can be downloaded or viewed online. Some of the marketers compared it to Netflix type videos.

31. The SSM compensation scheme was structured so the originator of this would make the bulk of the money by first taking the victim's "buy in" and then their first sale as a "qualifier" as it was stated so the first sale once a victim has bought in would go up to the person that brought you in. For example, if the Plaintiff had bought in for $3,000, and made a subsequent sale of $2,000 his first sale of say $2000 would get passed up to Peter. Additionally, if the Plaintiff really found a sucker on his second sale and convinced the individual to part with $20,000, the Plaintiff would be limited to getting paid $3,000 on his second sale and the remaining $17,000 of the $20,000 would get passed up to Peter.

32. Peter regularly sent unsolicited text messages and regularly placed unsolicited phone calls to the Plaintiff. Peter placed at least 30 unsolicited text messages to the Plaintiff, which count as illegal phone calls per the FCC's interpretation of the TCPA. Peter has similarly made dozens of illegal telephone calls to the Plaintiff as well offering the same promise of fast, easy money.

33. One of the text messages on July 15, 2015 to 615-212-9191 stated *"It's pete 8PM EST Tonight: SSM Conf Call, 1-857-232-0157 enter code 33862. Hear how u can make $10k per month. Q&A session for u too."*

34. This "Business opportunity" didn't consist of any physical products, franchise, or services being offered for sale. Nothing of actual value was offered in exchange for thousands of dollars charged up front, other than the purported "training materials and virtual products" and so forth. Peter or "Coach Pete" as he called himself, offered nothing more than the opportunity to pay thousands of dollars to "buy" the opportunity to place thousands of illegal automated telephone calls to other consumers and hope for a few unwitting victims to fall prey to the scheme. It is similar to a pyramid scheme and was previously known as "Cash gifting".

35. In an email to the Plaintiff on May 11, 2015, Peter stated *"And when people start to sign up under you, that's when the real $$$ comes in. Remember the comp (Compensation) plan in the webinar? If not, watch cashfreedomvideo.com. Everyone you bring in owes their first sale to you. That's the training sale or one up sale. It's awesome and I love it."*

36. Similarly, Oscar Christian Kinney placed multiple illegal telephone calls to the Plaintiff selling a "Secrets of the Wealthy" program. Even after the Plaintiff told Christian that he wasn't interested, but Christian or "Coach Christian" continued to call the Plaintiff selling this fast cash, money making opportunity. This is another version of the "Secrets of the wealthy" program with a pyramid scheme based on placing illegal telemarketing

calls to consumers. Christian Kinney violated the TCPA by placing multiple automated telephone calls with pre-recorded messages to the Plaintiff.

37. In total, Defendant Kinney placed at least 10 automated calls to the Plaintiff's cell phones on 3/24, 3/25 three times, 3/26, 4/1, 8/13, 8/4, 7/22, and 5/2 to 615-212-9191 and two additional calls on 9/8 and 9/3 to 615-331-7262 from 321-248-4822. These calls were all placed by an automated telephone dialing system and the defendant failed to have a do-not-call policy and list. The pre-recorded messages also failed to state the person/entity on whose behalf they were calling.

38. Similarly Dave Hill, aka Dave Allen, aka Dave aleen violated the TCPA by placing the calls and text messages listed below using an automated telephone dialing system with pre-recorded message. In total, Defendant Dave placed a total of 14 text messages from 331-220-0308 to the Plaintiff's cell phone 615-212-9191 on September 16, 17, and 18, 2015 and 4 phone calls on 9/16 and 9/17 involving the same phone numbers for a total of 18 calls in violation of the TCPA.

### Transitioning from SSM To Enagic

39. Many of the "Secret Success Machine" Defendants placed phone calls selling the "Secret Success Machine" for a few months and then moved on to a better and new opportunity to take advantage of people using the Enagic water machine as a new product, but using the same practices, tactics, marketing lists, and procedures used to sell the "Secret Success Machine", specifically, automated text messages, automated phone calls,

8

literally the exact same pre-recorded message, and the exact same calling list, which included the Plaintiff.

40. Many of these individuals know each other and work together in concert to sell Enagic products after previously selling SSM products and these individuals met on Facebook primarily and use it as a conduit to scheme and figure out how to take advantage of consumers.

41. A good example of the cross over from using robocalls to sell the SSM offering to the Enagic product is Walter Peterson through My minds Eye, LLC. Walter stated to the Plaintiff and on a conference call for Enagic that he initially got started selling the SSM but recently moved on to selling the Enagic water machine after several other people he knew in an online Facebook group crossed over and started selling Enagic water machines.

42. Walter placed a telephone call to the Plaintiff shortly after graduating up to the Enagic water machines from the SSM and stated as much in a solicitation call to the Plaintiff for selling Enagic water machines. Walter placed multiple calls to the Plaintiff's cell phone 615-212-9191 in an attempt to sell the Plaintiff an Enagic water machine as indicated on the spreadsheet of alleged calls.

43. Brian Kaplan also transitioned from selling the SSM product to the Enagic water machines. Brian sent the Plaintiff multiple unsolicited text messages and placed multiple phone calls to the Plaintiff in an attempt to sell Enagic products as well as SSM products. Brian violated the TCPA by placing

9

calls and sending text messages in violation of 47 USC 227(b) and 47 USC 227(c)(5) as indicated on the spreadsheet of the alleged calls.

44. Jerry Maurer transitioned from selling the SSM product to the Enagic water machine. Jerry sent multiple phone calls and text messages to the Plaintiff's cell phone in an attempt to sell SSM and Enagic products using automated telephone dialing systems and pre-recorded messages. Jerry violated the TCPA by placing calls and sending text messages to the Plaintiff in violation of 47 USC 227(b) and 47 USC 227(c)(5) as indicated on the spreadsheet of calls.

## ENAGIC USA AND ITS DISTRIBUTOR-EMPLOYEES VIOLATED 47 USC 227(b) BY PLACING AUTOMATED TELEPHONE CALLS WITH PRE-RECORDED MESSAGES TO THE PLAINTIFF's CELL PHONE

45. Defendant Enagic USA violated 47 USC 227(b) when phone calls were placed by or on behalf of Defendant Enagic USA to the Plaintiff's cell phone using an automated telephone dialing system, which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. These calls were placed without the Plaintiff's prior express consent. The calls also contained a pre-recorded message as well and were not for any emergency purpose.

46. These calls listed below were made by Defendant Enagic employees, independent contractors, or 3rd parties/subcontractors hired by Enagic or its independent contractors to place automated telephone calls to

10

consumers and text messages. Enagic's business model, policies, and procedures utilize a direct sales model to consumers, and Enagic through its distributor sales force uses automated telephone dialing systems and pre-recorded messages as defined by 47 USC 227 to market and advertise Enagic products for sale to consumers.

47. The Plaintiff's cell phone, 615-212-9191 was called was by Defendant Enagic for the purpose of marketing the Enagic products for sale. The Plaintiff notes that the individual defendants placing the calls on behalf of Enagic altered the caller ID information to show their own phone numbers as the incoming caller ID information. This was done so that a prospect (aka the Plaintiff) would see the Enagic distributor's phone number instead of 800 Links outgoing caller ID information when placing a call and in the hopes that a prospect would call the distributor back directly.

48. Enagic specifically permitted distributors to use of automated telephone dialing systems to market Enagic products, just so long as the specific name and trademarks of Enagic was not used. For example, in the Enagic Policies and Procedures manual, regarding telephone solicitation, Enagic states *"The use of the Company's name or copyrighted materials may not be made with automated calling devices or "boiler room" operations either to solicit distributors or retail customers."*

49. The key point being that while Enagic prohibited the use of their name and copyrighted materials, Enagic approved of and did not prohibit otherwise the use of automated telephone dialing systems to solicit distributors and

11

retail customers. This is why the Enagic distributors framed the sales pitch as a *"get rich quick"* scheme initially to avoid using the Enagic name, and only later in 1 on 1 calls or conference calls was it fully disclosed that the purpose of the call was to advertise Enagic water machines.

50. The Plaintiff was and still is the subscriber to 615-212-9191 and 615-331-7262 at all times relevant to the complaint. At no time, before, during, or after the calls has the Plaintiff provided to Enagic or any of its agents/employees, distributors, or anyone affiliated in any way with Enagic or its distributors express written consent to be called using an automated telephone dialing system and/or pre-recorded message.

51. Even after serving Defendant Enagic with a copy of the complaint, several more phone calls and text messages offering Enagic products for sale have continued to be placed to the Plaintiff's cell phone.

52. Some of the phone calls the Plaintiff has identified as being placed by 800Link, Inc. and Multiplex systems Inc.

### ALLEGED CALLS PLACED TO THE PLAINTIFF IN THIS CASE

53. The Plaintiff hereby alleges the following phone calls were made in this case. The Plaintiff shall include this as a separate exhibit to the complaint as well.

54. All of the calls other than calls with the SSM notation from coach Dave and calls/text messages from Peter Polselli were by Defendant Enagic or on behalf of Defendant Enagic and for their benefit. This information provided gives the caller ID/Calling phone number, the date/time of the

calls, the contents of the call, the called phone number of the Plaintiff, and the name given if any.

55. The Plaintiff notes that this is not a complete list as there were several calls the Plaintiff did not answer or missed not on this list, but should be obtainable in discovery.

| Phone Contents | Caller ID/Dialing Phone # | Date | Time | Called # | Name given |
|---|---|---|---|---|---|
| Brian Kaplan call regarding Enagic | 303-800-6458 | 10/19/2015 | / 09:01 | 615-212-9191 | Brian Kaplan |
| Live Call from Brian about Enagic | Unknown | 10/19/2015 | / 15:48 | 615-212-9191 | Brian Kaplan |
| Rick calling from Enagic about buying a machine | 770-778-4276 | 07/06/2015 | / 15:37 | 615-212-9191 | Rick Freeman |
| Rick calling from Enagic about being #1 in United states and #12 worldwide, refers to previous voice broadcast | 770-778-4276 | 07/22/2015 | / 11:56 | 615-212-9191 | Rick Freeman |
| Rick calling from Enagic about being #1 in United states and #12 worldwide, asks Plaintiff to buy Enagic machine, talks about Terry Collins obtaining leads | 770-778-4276 | 07/27/2015 | / 19:36 | 615-212-9191 | Rick Freeman |
| Call from Rick Freeman soliciting the Plaintiff to buy Enagic product | 770-778-4276 | 09/21/2015 | / 15:49 | 615-212-9191 | Rick Freeman |
| Rick calling from Enagic to buy a machine to join his team and a conference call | 770-778-4276 | 09/22/2015 | / 11:47 | 615-212-9191 | Rick Freeman |
| Rick calls again asking if I had any questions, asks if I am ready to join their Enagic team and buy a machine | 770-778-4276 | 10/29/2015 | / 14:48 | 615-212-9191 | Rick Freeman |
| Rick calling from Enagic to buy a machine, talks about team victory website and E-book, talks about pre-recorded messages and noupfrontmoney.com, talks about how Enagic approved use of cold-calling tool from phone burner | 770-778-4276 | 10/29/2015 | / 11:11 | 615-212-9191 | Rick Freeman |
| Rick calling from Enagic to | 770-778-4276 | 10/06/2015 | / 14:59 | 615-212- | Rick |

13

| | | | | 9191 | Freeman |
|---|---|---|---|---|---|
| buy a machine, talks about automated dialing system and cold calling telemarketing vs recording | | | | | |
| SSM call coach dave | 480-454-8281 | 09/16/2015 | / 17:32 | 615-212-9191 | Robocall from coach dave |
| Secret success machine call from Dave, live | 331-220-0308 | 09/16/2015 | / 17:04 | 615-212-9191 | coach dav |
| Missed call on behalf of Enagic | 303-9270615 | 08/18/2015 | / 15:41 | 615-212-9191 | Brian Kaplan |
| Missed call on behalf of Enagic | 303-9270615 | 10/09/2015 | / 10:49 | 615-212-9191 | Brian Kaplan |
| Call requesting the Plaintiff to buy enagic product | 303-800-6458 | 08/19/2015 | / 17:04 | 615-212-9191 | Brian Kaplan |
| Calling about Enagic getting started | 812-697-1844 | 06/09/2015 | / 18:53 | 615-212-9191 | Angelina Liner |
| Pre-recorded message about Enagic | 573-370-3000 | 07/16/2015 | / 12:36 | 615-212-9191 | Call on behalf of Tara |
| Enagic call trying to get me signed up. | 618-767-6240 | 07/16/2015 | / 19:31 | 615-212-9191 | Tara Enagic |
| Walt Peterson call trying to sell Enagic machine, | 305-230-4966 | 07/27/2015 | / 16:14 | 615-212-9191 | Walt Peterson |
| Enagic automated call w/ pre-recorded message | 714-500-7111 | 07/21/2015 | / 20:08 | 615-212-9191 | None Given |
| Pre-recorded message about Enagic | 781-214-4465 | 07/21/2015 | / 13:04 | 615-212-9191 | None Given |
| Enagic call from Brian Kaplan about "no money down" option, pre-recorded call | 303-927-0615 | 10/18/2015 | / 13:30 | 615-212-9191 | Brian Kaplan |
| Call about Enagic | 812-697-1844 | 06/09/2015 | / 18:53 | 615-212-9191 | Angelina Liner |
| Brian Kaplan pre-recorded message | 303-927-0615 | 10/21/2015 | / 15:01 | 615-212-9191 | Brian Kaplan |
| Walt Peterson call trying to sell Enagic machine, from Enagic conference in Orlando | 561-901-4989 | 10/08/2015 | / 18:02 | 615-212-9191 | Walt Peterson |
| Automated w pre-recorded message, missed call | 781-214-4465 | 08/04/2015 | / 20:29 | 615-212-9191 | None Given |
| Walt Peterson call trying to sell Enagic machine, walter states that he purchases leads | 561-283-4989 | 10/19 | / 11:14 | 615-212-9191 | Walt Peterson |
| Enagic automated call w/ pre-recorded message | 714-500-7111 | 08/04/2015 | / 20:29 | 615-212-9191 | none |
| Pre-recorded call about Enagic | 781-214-4465 | 08/05/2015 | / 11:06 | 615-212-9191 | None |
| Pre-recorded , faild to start, dad air, Enagic, missed call | 781-214-4465 | 08/02/2015 | / 14:02 | 615-212-9191 | None |
| Pre-recorded, automated, dead air | 781-214-4465 | 07/21/2015 | / 13:04 | 615-212-9191 | None |
| Pre-recorded ,missed call | 781-214-4465 | 08/06/2015 | / 11:00 | 615-212- | None |

| | | | | 9191 | |
|---|---|---|---|---|---|
| Enagic | | | | 9191 | |
| Enagic automated call w/ pre-recorded message | 541-654-0400 | 08/11/2015 | / 11:19 | 615-212-9191 | None |
| Brian Kaplan pre-recorded message | 303-218-9563 | 08/17/2015 | / 15:06 | 615-212-9191 | Brian Kaplan |
| Call back to Brian from missed call | 970-682-0748 | 08/18/2015 | / 17:41 | 615-212-9191 | Brian Kaplan |
| Enagic automated call w/ pre-recorded message | 303-927-0615 | 08/18/2015 | / 15:41 | 615-212-9191 | Brian Kaplan |
| Enagic call, been running the dialer, asked about if I have heard back from Comerica to purchase Enagic machine | 707-776-6911 | 08/27/2015 | / 17:18 | 615-212-9191 | Jeff Howard |
| Enagic Conf call invite, pre-record | 618-223-5902 | 09/09/2015 | / 13:19 | 615-212-9191 | Brian Kaplan |
| Enagic Conf call invite, pre-record | 480-454-8281 | 09/16/2015 | / 17:32 | 615-212-9191 | None Given |
| Enagic Conf call invite, pre-record | 618-223-5902 | 09/16/2015 | / 17:48 | 615-212-9191 | Brian Kaplan |
| Enagic Conf call invite, pre-record | 618-223-5902 | 09/16/2015 | / 13:55 | 615-212-9191 | Brian Kaplan |
| SSM call coach dave, live call | 331-220-0308 | 09/17/2015 | / 16:22 | 615-212-9191 | Coach Dave |
| Jeff Howard call asking Plaintiff to Buy Enagic machine | 707-776-6911 | 09/28 | / 13:02 | 615-212-9191 | Jeff Howard |
| Enagic Conf call invite, pre-record | 618-223-5902 | 09/23/2015 | / 13:07 | 615-212-9191 | Brian Kaplan |
| Enagic Conf call invite, pre-record | 618-223-5902 | 09/23/2015 | / 17:34 | 615-212-9191 | Brian Kaplan |
| Enagic call, talks about why I am not following through, Plaintiff lets him know he was getting sued | 707-776-6911 | 09/28 | / 13:02 | 615-212-9191 | Jeff Howard |
| Cold Call selling Enagic after transitioning from SSM | 561-283-4989 | 10/01/2015 | / 17:36 | 615-212-9191 | Walt Peterson |
| Enagic call, asks if Plaintiff has gone online to get his Enagic machine yet | 707-776-6911 | 09/22 | / 17:37 | 615-212-9191 | Jeff Howard |
| Enagic call, asking about getting started, have I ordered machine | 707-776-6911 | 09/14 | / 14:07 | 615-212-9191 | Jeff Howard |
| Enagic call, asking about getting started and buying Enagic machine | 707-776-6911 | 09/16 | / 13:29 | 615-212-9191 | Jeff Howard |
| Enagic call back from Jeff Howard, talks about pre-recorded message, Jeff talks about Enagic video and website "Noupfrontmoney.com" | 707-776-6911 | 08/26 | / 14:57 | 615-212-9191 | Jeff Howard |
| Enagic call, asking about getting started and buying Enagic machine | 707-776-6911 | 08/26 | / 16:44 | 615-212-9191 | Jeff Howard |

| | | | | | |
|---|---|---|---|---|---|
| Enagic call, asking about getting started, talks about automated call and pre-recorded message previously sent | 707-776-6911 | 07/23 | / 13:36 | 615-212-9191 | Jeff Howard |
| Enagic call, asking about getting started and buying a machine | 707-776-6911 | 07/14 | / 14:15 | 615-212-9191 | Jeff Howard |
| SSM call from Dave about getting setup and requesting payment, live call | 331-220-0308 | 09/17/2015 | / 10:03 | 615-212-9191 | Coach Dave |

## TEXT MESSAGES

| | | | | | |
|---|---|---|---|---|---|
| Text messages about conference calls for Enagic | 970-372-0456 | 9/8 x 7, 9/24x 2, 9/30, 10/3 x 2, 10/7, 10/14x2, 10/20x3, 10/27x3 | 12:13, 12:51, 12:51, 12:52, 12:52, 12:54, 6:28, 4:08, 4:11, 6:33, 5:35, 5:50, 1:04, 6:25, 2:15, 2:15,6:44, 1:08, 1:10, 6:33, | 615-212-9191 | Brian Kaplan |
| Text Message about website noupfrontmony.com and request to purchase Enagic machine | 707-776-6911 | 8-26 x3, 9/22 | 3:07, 5:13, 5:37, 5:54, 5:54 | 615-212-9191 | Jeff Howard |
| request to purchase Enagic machine | 770-778-4276 | 4/9 and 4/10 | 4:07, 9:37 | 615-212-9191 | Rick Freeman |
| Messages about conference call about Enagic | 516-214-2220 | 9/24 x 2 | 4:12, 4:18 | 615-212-9191 | Jerry Maurer, |
| Text message about websit coachdaveslife.com and SSM and requests to send money | 331-220-0308 | 9/16x2, 9/17x3, 9/18x9 | 6:32, 6:41,10:22,2:39, 2:39, 8:53,11:07, 11:36, 11:40, 12:55, 2:29, 3:25, 3:26 | 615-212-9191 | Dave Hill, Dave Allen, Dave Aleen, |
| SSM calls about conference calls and the website cashfreedomvideo.com | 631-987-3454 | 5/5, 5/8x4, 5/9, 5/13x2, 5/14, 5/20x2, 5/21, 5/22x2, 5/27, 5/28x2, 6/3x2, 6/5, 6/6, 6/10x2, 6/11, 6/26x6, 6/29, 7/1x2, 7/3, 7/8, 7/15, 7/18, 7/22, 7/29, 7/30, 8/5, 8/19, 8/20, | 5:20, 8:51, 8:51, 8:51, 1:46, 11:52, 12:38, 6:43, 2:39, 2:19, 6:53, 2:52, 3:02, 3:02, 3:55, 9:52, 9:52, 2:29, 6:06, 4:08, 10:26, 1:33,6:06, 7:05, 10:40, 10:40, 10:40, 10:40, 10:40, 10:40, 10:40, 10:40, 2:13, 2:26,6:52, 7:37, 1:13, 2:59, 7:00, 2:08, 11:25, 1:48, 11:40, 2:29, 4:44, 3:10, 2:35, | 615-212-9191 | Pete Polslli, ssm |

| | | 8/26, 8/27, 8/30 | 3:50, 2:16, 11:01, 1:26, | | |
|---|---|---|---|---|---|
| Conference calls for Enagic | 970-682-0748 | 8/18x2, 8/19x2 | 2:44,2:44, 10:07, 10:07 | 615-212-9191 | Brian Kaplan Enagic |
| Conference calls for Enagic | 970-372-0456 | 9/24 x 2, 9/30, 10/3x2, 10/7, 10/14 | 4:17, 4:17,6:40, 10:59, 11:00, 6:03, 6:31 | 615-331-7262 | Brian Kaplan Enagic |

**Enagic's Distributors are improperly classified as independent contractors, but should be properly classified as Employees conducting advertising and marketing on behalf of Enagic, making Enagic USA Inc., directly responsible for their conduct**

56. Defendant Enagic hired the distributors as employees to do all of the sales and marketing for Enagic. Despite Enagic's misclassification's of the distributors as Independent Contractors, they are correctly classified as Employees of Enagic following the "Economic realities" test.

57. The 6th Circuit recently ruled in Keller v Miri Microsystems LLC, for example that despite an installer provided his own vehicle, tools, and equipment, could set his own schedule, was not required to wear a uniform, could work for other companies, and was able to hire his own staff, he could still be considered employee not an independent contractor. As employees, Enagic is directly responsible for their actions and improper telephone calls. The 6th circuit has held that the "FLSA's definition of an employee is strikingly broad" and "stretches the meaning of employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles.

58. Enagic exercised control over the distributors by reviewing, editing, and approving scripts and content used in automated calls to ensure that Enagic's name was not directly used, reviewing website content to ensure that it did not directly use Enagic's name or trademarks, as well as retaining the power to cancel distributorships, effectively firing employees who violated these policies and practices, as well as retaining the power to hire employees through its distributor application. Enagic's distributors were hired to perform sales and marketing on behalf of Enagic, according to the company training videos, and Enagic did exercise control over these distributor's sales and marketing efforts, thus making these individuals employees.

59. Furthermore, Enagic distributors were paid via W2 not 1099 as independent contractors are paid, again suggesting that they are really employees and not independent contractors.

60. As employees of Enagic, Enagic USA is directly liable for the conduct of their employees and the court should find Enagic directly responsible for each and every text message and call placed by its employees.

**IF ENAGIC DISTRIBUTORS ARE DEEMED TO BE INDEPENDENT CONTRACTORS, NOT EMPLOYEES, ENAGIC SHOULD BE DEEMED A "SELLER" UNDER THE TCPA AND VICARIOUS LIABILITY SHOULD APPLY TO ENAGIC AND DIRECT LIABILITY TO THE DISTRIBUTORS.**

61. In the alternative, even if the agents are deemed to be Independent contractors, Defendant Enagic is still vicariously liable for their actions as

from Enagic's own training material, the sales force of satisfied customers functioned on behalf of Enagic and were paid to do all of the sales and marketing.

62. The FCC has defined a seller as "*the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted by any person.*" per 47 CFR 64.1200(f)(9). A telemarketer is defined as *"the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of or investment in property, goods, or services, which is transmitted to any person"* per 47 CFR 64.1200(f)(11). The FCC has deemed that *"the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers"* In the Dish Network petition, 28 FCC rcd at 6588 and therefore applies vicarious liability to the actions of third parties acting on behalf of a seller.

63. Should the court deem the Enagic distributors to be properly classified as independent contractors and not employees, then vicarious liability should apply to Enagic and direct liability to the distributors. The Plaintiff also alleges the parties should be held jointly and severally liable for the violations.

**Enagic is vicariously liable under the principal of actual authority**

64. An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes,

in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act.

65. In this case, the Enagic distributors were acting on behalf of Enagic USA, as they reasonably would have done marketing and advertising on behalf of Enagic, which both parties agreed the distributors would do.

66. A finding of actual authority requires a manifestation by the principal that the agent shall act for them.

67. In this case, that manifestation is found in the Enagic training videos, which state *"The sales force of satisfied customers does all the sales and marketing for Enagic themselves."*

68. Enagic policies and procedures that state *"Enagic USA, Inc., hereinafter the "Company" is a direct selling company marketing health products and other consumer products and services to the consumer through independent distributors"* and *"Company distributors shall not advertise company products and services and/or marketing plans except as specifically approved by the Company."* and "*Enagic distributors do not buy Enagic water treatment systems for resale. An Enagic distributor acts as an order taker to retail customers...*

69. Furthermore, Enagic distributors have stated that they are being compensated in the form of a commission to market and advertise on behalf of Enagic USA, Inc. as distributor Orlando Diaz stated in conference call for selling Enagic water machines that the Plaintiff was notified of through an illegal text message stated *"We are the marketers,*

*right. We are the advertisers for the manufacturer, right, so they pay us that 57% which goes into our pocket."*

70. Next, each and every Enagic distributor that called the Plaintiff signed a "Product order and Distributor application" contract with Enagic USA Inc., which is a formal contract and clear acceptance of the undertaking.

71. Lastly, there is an understanding that the principal is in control of the undertaking.

72. The Enagic Distributor application clearly makes the element of control in place of Enagic. The application states *"I certify that I have been furnished a copy of, and have read, understand, and agree to the provisions in Enagic USA Inc's policies and procedures manual, which documents are hereby incorporated by reference as if fully set forth herein and set forth the exclusive terms and conditions of my agreement with Enagic USA, Inc".* The Enagic Policies and procedures lay out across 31 pages a broad array of controls, terms, rules, prohibitions, that Enagic USA Inc., imposes on distributors. It is clear from reading this document that Enagic retails almost exclusive control over distributors as part of this agreement.

73. For example, per the Policies and procedures manual Enagic USA, Inc. *"reserves the right to accept or reject anyone as a distributor"* and *"Change in company policy or other actions such as termination may occur without notice to the distributor."* Enagic restricts the ability of a distributor to speech as distributors may not *"Disparage the company, other company distributors, company products and/or services, the*

*marketing and compensation plans, or company employees. Violation of the above is grounds for termination.*" Enagic has rules that cover the use of copyrights and trademarks as well by distributors. Finally, Enagic *"reserves the right to terminate any distributorship at any time for cause when it is determined the distributor has violated the provisions of the distributor agreement, including the provisions of these policies and procedures as they may be amended or the provisions of applicable laws and th standards of fair dealing. Such involuntary termination shall be made by the company at its discretion."*

74. Most importantly, Enagic USA had control over how advertising/marketing was done on their behalf by distributors. Enagic has a specific policy that authorizes automated telephone dialing systems to market Enagic products to consumers just so long as the Enagic trademarks and specific name is not used in the automated call. Additionally, Enagic distributors altered their marketing tactics in response to Enagic USA direction and control.

75. For example Rick Freeman stated on 9/7/2015 (after a california class action and the Plaintiff's lawsuit has been served) to the Plaintiff in an email *"Enagic does not endorse the voice broadcasting, therefore we are transitioning to other BIGGER & BETTER marketing systems. If you choose to continue with voice broadcasting we cannot endorse this program as a team. You need to understand that if you choose to continue with voice broadcasting, (sic) in could jeopardize your distributorship with*

*Enagic. I will keep you updated with the new systems that are approved by Enagic & they will be available for our team very soon."*

76. Additionally, on August 19, 2015, Rick Freeman emailed the Plaintiff and stated *"In order to comply with Enagic's policies and procedures, we had to remove the name "Enagic" from the website, although the information will still point to Enagic"* in reference to the website www.noupfrontmoney.com

77. On September 9, 2015, Rick Freeman emailed the Plaintiff and stated *"As of today, we now have a new 15 minute recorded call for people who are working biz opp leads that DID NOT RESPOND TO AN AUTOMATED/ROBOCALL AD...Please DO NOT USE THIS RECORDING FOR LEADS THAT RESPOND TO AN AUTO-DIALER, as we are more explicit about our product being a Kangen water machine, and we do not want any potential trouble to come from that."* (Emphasis in original)

78. In summary, Enagic distributors clearly had actual authority to market and advertise on behalf of Enagic USA, Inc and did so after both parties agreed by written contract that the distributors would engage in marketing and advertising. Enagic retained all control per the contract over the distributors determining which distributors Enagic would accept, maintained sole discretion on any changes/amendments to the rules of the agreement, and restricted the speech of distributors, retained sole discretion to terminate distributors, and most importantly exercised control

over how the marketing was to be performed by distributors on behalf of Enagic.

**Enagic is vicariously liable under the concept of Apparent authority**

79. According to the FCC, there are several examples of evidence that might be relevant in a finding of apparent authority: 1. Access to detailed information regarding the nature and pricing of the seller's products and services 2. the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems 3. the authority to use the seller's trade name, trademark, and service mark, and 4. that the seller approved, wrote or reviewed the outside sales entity's telemarketing scripts and 5. if the seller knew or should have known that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to stop. [1]

80. In this case all of these elements identified by the FCC in finding apparent authority liability are present. Enagic distributors had access to detailed information regarding the pricing of Enagic products. This pricing information is not publicly available and is not listed online by Enagic USA.

81. Enagic distributors had the ability to enter customer information into Enagic USA's sales systems online, and at least 2 distributors walked the Plaintiff through the process on how to do so, Jeff Howard and Rick Freeman.

---

[1] see Makaron v GE Sec. Mfg. Inc., not reported in F. Supp. 3d (2015) citing Dish 2 FCC Rcd at 6592.

82. Enagic distributors had authority to use the Enagic trade names/trademarks in marketing Enagic products and regularly did so in conference calls and 1 on 1 conversations with the Plaintiff. Enagic policies and procedures authorize the defendants to utilize the Enagic trademarks/names.

83. Enagic as demonstrated in the section above reviewed websites, pre-recorded message content, approved of telemarketing scripts and approved of marketing tactics used by the distributors in this case.

84. Lastly, Enagic knew or should have known that their agents were violating the TCPA by placing illegal telemarketing calls and Enagic refused to discipline, control, or terminate any dealers until after served with a copy of this lawsuit. By policy, Enagic authorized the use of automated telephone dialing systems to sell Enagic products just so long as the tradmarks/names of Enagic were not used. Additionally, despite getting sued, calls and text messages to the Plaintiff have continued to roll in advertising Enagic products for sale. Furthermore, Enagic approved the use of a "phone burner" according to the statements of Rick Freeman on 10-29-2015, which is a way to place cold calls without manually dialing the calls, which is the textbook definition of an automated telephone dialing system.

85. Two elements of a recent TCPA decision on vicarious liability also lend support as well. In making no finding of apparent authority, it was significant that the court found that a Defendant *"UTCFSA did not employ*

*its dealers or distributors or dealers in any way and it did not place them in charge of marketing for UTCFSA. UTCFSA did engage in marketing directly to distributors and dealers. Once the distributors and dealers purchased UTCFSA's products, those distributors and dealers were responsible themselves for packaging and promoting their goods for sale for their own profit.[2]"* By contrast, in this case, Enagic DOES engage in marketing directly to consumers, places their distributors in the role of marketing and advertising on behalf of Enagic, specifically forbids distributors from purchasing Enagic products for resale[3] and Enagic does make a profit on the sale of each device sold by Enagic distributors.

86. In conclusion, Defendant Enagic is vicariously liable under the concept of apparent authority for the calls placed by the individual distributors.

**Enagic is vicariously liable under the concept of Ratification**

87. Defendant Enagic ratified the conduct of their distributor agents by celebrating their conduct, celebrating their sales accomplishments, sponsoring sales contests for distributors, and knowingly accepting the benefits in the form of millions of dollars in sales from these distributors marketing in an illegal fashion.

88. Rick Freeman who has placed numerous illegal calls and texts to the Plaintiff was noted by Enagic as the #1 seller in the United states in a congratulatory email.

---

[2]see Makaron v GE Sec. Mfg. Inc., not reported in F. Supp. 3d (2015)
[3]Enagic policies and procedures 7a states *"Enagic distributors do not buy Enagic water treatment systems for resale. An Enagic distributor acts as an order taker to a retail customer..."*

**Enagic is vicariously liable as any other finding would undermine the deterrent effect and purpose of the TCPA**

89. As the FCC noted in the Dish network petition, the vicarious liability theory is only one way that defendants may be held liable for 3rd parties they hire to violate the law. As noted in Jackson v Caribbean Cruise Line, 2:2014-cv-02485, document 83 (2015) "*a number of courts have considered whether a defendant my nonetheless be held vicariously liable under the TCPA in accordance with traditional tort principles. The overwhelming majority have answered that question in the affirmative.*" additionally, the court held that "*Some courts have looked to th purpose of the TCPA and found that to hold otherwise, that is to decline to recognize potential vicarious liability under the statute would undermine its deterrent effect. See Bank, No. 12-cv-584, at 18-18 ECF No. 49 ("If a company were allowed to avoid TCPA liability by merely hiring a different company to make unlawful calls, the statute would lose its deterrent effect. Vicarious liability prevents this liability maneuvering")* and cited "*Birchmeier v Caribbean Cruise Line, Inc., No. 12 C 4069 (MFK), 2012 WL 7062748, at *1 (N.D. Ill. Dec 31, 2012) ("To offer an example, suppose that A, a well heeled entity wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, th impecunious dialer, would be liable, and that A would get*

*off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA")*

90. Under this rationale, doing anything other than holding Enagic USA as vicariously liable for the actions of the distributors hired to place illegal telemarketing calls on behalf of Enagic USA Inc., would lead to an absurd result allowing Enagic USA to get off scot-free, undermine the deterrent effect of the TCPA, and run counter to the overwhelming majority of courts that have reviewed similar TCPA decisions.

## Enagic placed calls to the Plaintiff's cell phone regarding Kangen Water Machine Sales

91. Defendant Enagic directly or through its agents, employees, and individuals/entities acting on behalf of and for the benefit of Defendant Enagic placed multiple phone calls to the Plaintiff's cell phones, which is 615-212-9191 in 2015 for the purpose of advertising the Enagic machines and soliciting the Plaintiff to purchase an Enagic water ionizing machine.

92. It was apparent to the Plaintiff that the phone calls were by, on behalf of, or for the benefit of Defendant Enagic, as the Enagic distributors who spoke to the Plaintiff stated they were calling on behalf of Enagic and for the purpose of selling Enagic water machines. Additionally, the agents directed the Plaintiff to training videos where Enagic USA stated *"The sales force of satisfied customers does all the sales and marketing for Enagic themselves."* and distributor Orlando Diaz stated in conference call for selling Enagic water machines that the Plaintiff was notified of

through an illegal text message stated *"We are the marketers, right. We are the advertisers for the manufacturer, right, so they pay us that 57% which goes into our pocket."*

93. Therefore, Defendant Enagic USA Inc., stated that their distributors do all the sales and marketing for Enagic for which they are compensated, and Enagic distributor, Orlando Diaz stated on a conference call the Plaintiff attended, explicitly that on behalf of Enagic, "*We are the marketers...We are the advertisers...they pay us that 57% (Commission)*". Based on this alone, it is reasonable to conclude that the Enagic distributors were calling the Plaintiff for the purposes of marketing Enagic products were calling on behalf of Enagic.

94. Furthermore, Enagic's own training videos that distributors directed the Plaintiff explained the compensation structure states the same as well saying *"How do you make money? **You start off purchasing one of Enagic's water ionizer devices** from another satisfied customer"* at :28-:35 and "***Once you have purchased your own machine** and you have decided to share the benefits of the Enagic water ionizer with others, you can make personal sales and also build a sales team"* at 1:00 to 1:10 and "***Enagic is able to pay this commission out to the sales force because the sales force of satisfied customers does all of the sales and marketing for Enagic themselves***"[4] at 2:01-2:10.

95. This wasn't a business opportunity, but rather an elaborate scheme to sell Enagic water machines by Enagic distributors/employees acting on behalf

---

[4]https://www.youtube.com/watch?v=CVBfSAsyPg4#t=43

29

and for the benefit of Enagic. Even if it were a pure business opportunity, the calls still violated the TCPA as they were automated calls to the Plaintiff's cell phone without consent and not related to an emergency purpose.

96. The prohibition in 47 USC 227(b)(1)(A)(3) applies to telephone calls placed to any telephone number that meets the criteria stated in that subsection, regardless of whether the telephone number is used or business or personal purposes. *See Warnick v Dish Network, LLC, 2014 US Dist Lexis 138381, \* 31-36 (D. Colo Sept. 30, 2014)*

97. Multiple agents of Defendant Enagic called the Plaintiff for the purpose of the Plaintiff purchasing an Enagic water machine from them and called the Plaintiff multiple subsequent times requesting the Plaintiff purchase Enagic machines from them. Individual defendants directed the Plaintiff to the website of Enagic USA to purchase water machines and sent the Plaintiff Enagic "purchase order and Distributor signup" documents for the purpose of purchasing Enagic water machines.

98. For example, Rick Freeman, as an Enagic distributor, walked the Plaintiff through the process, step by step, talking the Plaintiff through the process over the phone to purchase an Enagic water machine from the Enagic USA website to include providing his Enagic distributor number so that the Plaintiff would be placed under Defendant Rick. This was after multiple automated telephone calls from Defendant Rick that contained pre-recorded messages. Rick later followed up the calls with text messages

after the Plaintiff declined to buy the water machine stating *"Hello Craig Did you get the order completed online?"* on April 9, 2015 at 4:07PM from 770-778-4276 to 615-212-9191 and again on April 10, 2015 at 9:37AM involving the same phone numbers stating "*Hello Craig, did you complete your order with Enagic? Please call me, thanks*"

99. Rick Freeman, as an Enagic distributor, also stated in October 2015 to the Plaintiff that he has a new method of placing calls to leads after Enagic USA prohibited using pre-recorded messages entirely. Rick stated he was now placing calls through a "Phone burner" platform, which Rick explained is *"Just a cold calling system, its a way to make cold calls rather than dialing the leads yourself."* and  to be clear this new Phone Burner platform is an automated telephone dialing system that connects to a live person as opposed to a pre-recorded message, which is 100% in violation of the TCPA as well.

100.    Jeff Howard, as an Enagic distributor, also solicited the Plaintiff to buy an Enagic water machine after multiple automated telephone calls were placed to the Plaintiff's cell phone, to which the Plaintiff responded seeking more information only to identify the name and entity placing the call. After talking with the Plaintiff, Jeff Howard sent via email a signed "product order form and distributor application" on behalf of Enagic USA, which lists Corazon Management Group, Inc. as the sponsor and has Jeff Howard's name and signature at the bottom so the Plaintiff would be placed under Defendant Jeff.

101.    Defendant Jeff also sent illegal text messages to the Plaintiff, which stated "*Hey, Craig..I just talked to the finance guy and your sale is too close to the cusp to make a mistake on placement, so please go ahead and use the info I sent you. Let me know when you have completed the purchase. Thanks.*" on 9/22/2015 at 5:54 PM from 707-776-6911 to 615-212-9191.

102.    Each and every individual defendant other than the SSM identified callers called the Plaintiff in an attempt to sell an Enagic water machine on behalf of and for the benefit of Enagic USA Inc.

103.    Each and every call/text message that was made by an agent/employee of Defendant Enagic USA Inc., for the purpose of advertising and selling Enagic water machines for a commission for performing marketing and advertising on behalf of Enagic.

104.    The fact that the Plaintiff wound up with multiple Enagic Employee-distributors sending the Plaintiff an Enagic "Purchase order form and distributor application" in an attempt to get the Plaintiff to buy an water ionizer machine from Enagic after receiving unsolicited calls led the Plaintiff to believe that those specific calls  were made by or on behalf of Defendant Enagic.

105.    The Plaintiff is not required in order to have a claim under the TCPA to register his phone with the National Do-not-call list. Additionally, the FCC has prohibited ALL telephone calls to cell phones that are made without prior express written consent by the individual, so regardless of if

the calls are "telemarketing" or not, per 47 CFR 64.1200(d), which relates only to potential violations of 47 USC 227(c)(5) all of the calls all violated 47 USC 227(b)

**Enagic and agents/employees of Enagic placed phone calls to the Plaintiff using an Automated Telephone Dialing system and pre-recorded message.**

106.     It was immediately obvious to the Plaintiff that Defendant Enagic and agents acting on behalf of Defendant Enagic placed calls to the Plaintiff using an Automated Telephone Dialing System and Pre-recorded message.

107.     **First,** there was a characteristic pause or dead air when the calls would connect that is typical of automated telephone dialing systems connecting and starting the pre-recorded message.

108.     **Second,** the pre-recorded message was apparent, as there was nobody responding to the Plaintiff when he said "Hello" and the pre-recorded messages kept talking and giving testimonials from men, women, and various people that weren't the original person that started speaking.

109.     **Third,** the pre-recorded message literally stated that they were placing a pre-recorded message in the pre-recorded message. In one call from 541-654-0400 on 8/11/2015 at 11:19 to 615-212-9191, the pre-recorded states *"Hi, this is a call like none other that you have received, My name is Michael and like you, I was interested in bringing home more*

cash. I heard a message just like this, and I'm glad I listened to the whole thing before I decided to delete the message".

110.    Another call from 573-370-3000 to 615-212-9191 on starts off with *"Please stop and listen to this life changing message"* and continues to state "*Our experience is, for every 10 people that listen to the presentation, the one you are listening to right now, at least 6 want to become a business partner"* and in describing the benefits of joining the program, "*We will also set you up with your own automated profit system and message, exactly like the one you are hearing right now"*

111.    **Fourth,** each and every individual defendant placing calls on behalf of Enagic stated in followup conversations with the Plaintiff that they were using an automated telephone dialing system to place calls in order to sell Enagic water machines and placing automated telephone calls was a central element of their marketing system. In one conference call with Jeff Howard, he stated *"We use the automatic dialer for that reason"* in reference to saving time vs manually placing calls and later concedes that he knows he is annoying multitudes of people when he states *"Let's just call a spade a spade here, there's people that don't like getting these calls"* in discussing his strategy on using automated call lists and why he recommends not calling the same list over and over again as it is frequently viewed as annoying by consumers. It isn't hard to figure out that the defendants are using automated telephone dialing systems when they

34

literally state *"We are using automated telephone dialing systems, here's how you can too"*

112. **Fifth**, Defendant Jeff Howard, as an Enagic distributor, sent over a series of 5 emails with step by step instructions, how to videos, website links for additional instruction, templates, guides, and other information on how to place illegal automated calls when Jeff Howard thought the Plaintiff was signing up under him as an Enagic Distributor around the time that Defendant Jeff sent over the purchase order form and distributor application. For example, email #1 has the subject of "Welcome to Enagic" and contains instructions for setting up their marketing program that starts with:

1. *Setup your www.wateraudios.com 800Link Voicemail account for retrieving leads from our voice broadcasting ads.*

2. *Set up your www.waterdialer.com phone prospector account and start running **voice braodcast ads** and **making money!**[5]*

3. *A short training with the calling script on HOW TO make calls to leads who respond to our ads.*

4. *A final email with a detailed checklist to summarize everything you need to get up and running.*

113. If there was any doubt as to if an automated dialing system was being used, email 2 discusses how to buy minutes for the automated telephone dialing system and states *"Toll Number 1= (Your Autodialer Caller ID)"* and covers how to buy minutes from 800Link for using the automated telephone dialing system.

---

[5]Voice broadcasting and robocalling are colloquiel terms for using automated telephone dialing systems, consumers frequently derisively term the calls as "robocalls" and marketers try to use a more eloquent term and describe it as "Voice broadcasting". These terms of art describe the same practice of using an automated telephone dialing system to place telephone calls and are interchangeable. Emphasis is in the original

114.    As far as concluding that the calls were made via an automated-telehone dialing system, the overt admissions and claims by the defendants that they were making automated calls, the pre-recorded messages  that stated *"I heard a message just like this..."* step-by-step instructions on how to make automated calls, emails from the individual defendants containing the scripts used in the automated calls, as well as the sound, tell-tale dead air upon connection of the call all led the Plaintiff to believe that the calls were made by an automated telephone dialing system with pre-recorded message.

**The individual distributor defendants calling on behalf of Defendant Enagic violated 47 USC 227(b) and 47 USC 227(c)(5)**

115.    Jeffrey Howard, an Enagic distributor, either directly or through is Corporation, Corazon Management Group, Inc., has also placed multiple automated telephone calls to the Plaintiff's cell phone pitching the same Enagic water machine get rich quick money making opportunity. Jeffrey Howard stated to the Plaintiff in an email that he used Susie Tremblay-Brown who charges a fee to arrange the automated telephone calls and Susan stated that she personally obtains thousands of phone number leads, uploads the phone number leads into the automated telephone dialer systems that are used in the robocalling campaigns and arranges for robocaller campaigns, assists with technical setup and gives instruction on how to place these robocaller campaigns.

116.    The services and instructions sent from Susie Tremblay-Brown on behalf of Jeff Howard indicated they used 800link and stated that the Plaintiff should go to www.waterdialer.com, which redirects to www.phonebroadcasting.com, which is a website owned/operated by Peter Wolfing and Multiplex Systems Inc. and solicits the Plaintiff to make a payment to Multiplex Systems Inc. to buy minutes to make illegal automated dialer calls to start making money.

117.    800Link, Inc., alters the caller ID information on behalf of the callers, stores and plays the pre-recorded messages, and works with the automated call software to place automated calls to the Plaintiff's cell phone. Additionally, the individual defendants were effectively offering the products/services of 800Link, Inc., and Multiplex systems, Inc., in the instructions as a result of the illegal telephone calls to the Plaintiff.

118.    These entities, Peter Wolfing, 800Link, Inc, and Multiplex Systems Inc., represent at least one of the conduits of the illegal phone calls that directly placed to the Plaintiff on behalf of Enagic USA Inc.

119.    According to the statements of Rick Freeman and Terry Collins, Terry Collins was the proximate cause of the automated calls with pre-recorded messages reaching the Plaintiff. Terry Collins setup the system and processes for the automated calls to be placed by Rick Freeman on behalf of Enagic USA, Inc. Terry Collins is an Enagic distributor and was attempting to profit from the sale of an Enagic water machine to the Plaintiff. Terry Collins violated 47 USC 227(b) and 47 USC 227(c)(5) in

placing the calls by placing automated calls with a pre-recorded message to the Plaintiff's cell phone and by placing telemarketing calls without stating the name of the the person calling and for placing telemarketing calls without a do-not-call policy and list.

120.    Angelina Liner is an Enagic distributor who placed illegal automated calls to the Plaintiff's cell phone as indicated above. Angelina was calling on behalf of Defendant Enagic and placed the calls in an attempt to sell Enagic products to the Plaintiff. Angelina violated 47 USC 227(b) and 47 USC 227(c)(5) in placing the calls by placing automated calls with a pre-recorded message to the Plaintiff's cell phone and by placing telemarketing calls without stating the name of the the person calling and for placing telemarketing calls without a do-not-call policy and list.

121.    Angelina Liner is an Enagic distributor who placed illegal automated calls to the Plaintiff's cell phone as indicated above. Angelina was calling on behalf of Defendant Enagic and placed the calls in an attempt to sell Enagic products to the Plaintiff. Angelina violated 47 USC 227(b) and 47 USC 227(c)(5) in placing the calls by placing automated calls with a pre-recorded message to the Plaintiff's cell phone and by placing telemarketing calls without stating the name of the the person calling and for placing telemarketing calls without a do-not-call policy and list.

**Calls to the Plaintiff were made without the Plaintiff's prior express consent**

122.    The Plaintiff quite simply never asked Enagic or anyone representing Enagic to call him regarding anything. The Plaintiff never

gave Defendant Enagic his phone number or permission to call his phone number, nor did he give this information to any of the Enagic employees/distributors.

123.    According to statements from Enagic distributors, they obtained the Plaintiff's phone number from purchased leads which eliminates any possibility of the Plaintiff giving consent for Enagic to call.

124.    The Plaintiff has furnished a supporting affidavit under the penalty of perjury as well disclaiming any consent or permission to call.

125.    Additionally, an Enagic distributors on a conference call on October 29th 2015, Bobby Hesley, an Enagic distributor, stated in response to a question from called prospects about where the Enagic distributors obtained her phone number stated: *"Here's how you handle that guys, just be straight up honest with people when they ask how you got their information. This is what I tell people, I say I actually had your name on a list of home business entrepreneurs and we are able to obtain this list because your number was published online."*

126.    No court in the country has ever concluded that just randomly grabbing phone numbers from websites online constitutes prior express written consent, and courts have specifically rejected this argument, so by their own statements, there is no possible way that any of these calls occurred with the Plaintiff's prior express written consent, and the defendants admit that the calls were without consent describing the practice as "cold calling."

**Enagic and its employees/agents/distributors violated 47 USC 227(c)(5)**

**through violating 47 CFR 64.1200**

127.     As a separate subsection of the TCPA, which entitles the Plaintiff to
an additional $1500 per call recovery, the defendants violated 47 CFR
64.1200 in placing automated calls to the Plaintiff. It is under this
subsection and this subsection only, in which the distinction of
telemarketing may apply.

128.     All of the Defendants violated 47 CFR 64.1200(b), which applies to
any and all pre-recorded messages, regardless of telemarketing, and
requires that *"All artificial or pre-recorded voice telephone messages shall:
at the beginning of the message, state clearly the identity of the business,
individual, or other entity that is responsible for initiating the call."* and
*"During or after the message, state clearly the telephone number (other
than that of the autodialer or prerecorded message player that placed the
call) of such business, other entity, or individual.*

129.     Furthermore, the calls violated subsection d, which states *"No
person or entity shall initiate any call for telemarketing purposes to a
residential telephone subscriber, unless such person or entity has
instituted procedures for maintaining a list of person who request not to
receive telemarketing alls made by or on behalf of that person or entity.
The procedures instituted must meet the following minimum standards: 1.
Persons or entities making calls for telemarketing purposes must have a
written policy available on demand for maintaining a do-not-call list. 2.*

*Personnel engaged in any aspect of telemarketing must be informed and trained on the existence and use of the do-not-call list. 4. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made and a telephone number or address at which the person or entity may be contacted."*

130. None of the defendants or Enagic ever stated the name of the entity for which the calls were being placed, and in fact Enagic by policy explicitly forbids the mention of Enagic or any of their trademarks on the phone scripts or even the website referenced by the phone calls and threatened to cancel distributorships of individuals not following this rule.

131. For example, in the Enagic Policies and Procedures manual,regarding telephone solicitation, Enagic states *"The use of the Company's name or copyrighted materials may not be made with automated calling devices or "boiler room" operations either to solicit distributors or retail customers."*

132. Therefore, each and every all on behalf of Enagic automatically violated 47 CFR 64.1200(b) by Enagic company policy as the calls failed to state the name of the entity for which the calls were being made.

133. None of the calls stated the name, address, or phone number of the entity (ENAGIC) for which the calls were being placed on behalf of. None of the Defendants maintained or were trained on the use of a do-not-call policy and list. Defendant Enagic does not maintain a do-not-call policy or

train any of its employees/agents on the use of one as nothing in the Enagic policies or procedures refers to a do-not-call list use or training.

134.     The pre-recorded messages on every call failed to convey the true name of the individual placing the calls and for whom the calls were being made until the Plaintiff received a live call back from the individual that placed the calls.

## CAUSES OF ACTION:

### COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

135.     Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.


136.     The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing calls with pre-recorded/automated messages to the Plaintiff's cell phone in violation of 47 USC 227(b)

## CAUSES OF ACTION:

### COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

137.     Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

138.    The foregoing actions by the Defendants constitute multiple

breaches of the TCPA by placing unsolicited and unwelcome telephone

calls to the Plaintiff's cell phone. These phone calls also violated the

TCPA by having an pre-recorded message that didn't state the name,

address, or phone number of the calling party and the defendants failed to

have a do not call policy, failed to train their agents on the use of a do not

call policy, in violation of 47 USC 227(c)(5) as codified under 47 CFR

227(d)

## PRAYER FOR DAMAGES AND RELIEFS

A.  WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests

that judgment be entered against each and every defendant for the

following:

B.  Statutory damages of $3000 for each phone call.

C.  Pre-judgment interest from the date of the phone calls.

D.  Attorney's fees for bringing this action as applicable; and

E.  Costs of bringing this action; and

F.  For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained
in the foregoing complaint are true and correct to the best of my knowledge,
information and belief and that a true and correct copy of the foregoing was sent
to the defendants in this case.

Respectfully submitted,

Craig Cunningham
Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, tn 37211

615-348-1977

11/2/2015

B. Statutory damages of $3000 for each phone call.

C. Pre-judgment interest from the date of the phone calls.

D. Attorney's fees for bringing this action as applicable; and

E. Costs of bringing this action; and

F. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, tn 37211

615-348-1977

11/2/2015

44